## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALLSTATE CONSTRUCTION, INC., ET AL.** | **CIVIL ACTION** |
| | **NO. 23-1524** |
| **VERSUS** | |
| | **SECTION: "G"(5)** |
| **NAUTILUS INSURANCE COMPANY** | |

## <u>ORDER AND REASONS</u>

Before the Court is Defendant Nautilus Insurance Company's ("Defendant") Motion for Summary Judgment.[1] This litigation involves property damages and an insurance dispute following Hurricane Ida.[2] Defendant seeks summary judgment against Plaintiff Sawdust Hill, LLC ("Sawdust").[3] Defendant argues that based on the assignment of all Sawdust's post-loss rights to Allstate Construction, Inc. ("Allstate"), Sawdust does not have a right to seek any amounts from Defendant related to Hurricane Ida.[4] In opposition, Sawdust argues it does retain its right to assert bad faith claims to the extent it was not included in the assignment.[5] Considering the motion, the opposition, the record, and the applicable law, the Court grants the motion.

---

[1] Rec. Doc. 42.

[2] Rec. Doc. 1.

[3] Rec. Doc. 42.

[4] *Id.* at 1.

[5] Rec. Doc. 43.

## I. Background

On March 30, 2023, Allstate filed a "Petition to Enforce Appraisal Award and for Damages" in the 21st Judicial District Court for the Parish of Tangipahoa.[6] The petition states that at all relevant times, Sawdust owned the property located at 142 South 8th Street, Ponchatoula, Louisiana 70454 ("the Property").[7] The petition states Defendant provided an insurance policy to Sawdust which covered the property against perils, including hurricanes.[8]

On or around August 29, 2021, Plaintiff alleges Hurricane Ida caused significant damage to the property.[9] The petition states Sawdust promptly reported the loss to Defendant, and Sawdust subsequently executed an assignment of rights under the policy to Allstate.[10] Allstate contends it was unable to make meaningful repairs to the property with the insufficient proceeds allowed by Defendant.[11]

On or about November 9, 2021, AGG Properties, LLC ("AGG") inspected the property on behalf of Sawdust and estimated the property damages at $1,696,204.69.[12] On January 3, 2022, a demand for payment was sent to Defendant along with the AGG estimate.[13] On May 23, 2022, Allstate demanded appraisal of the property.[14] The appraisal process resulted in an appraisal award

---

[6] Rec. Doc. 1-1.

[7] *Id.* at 1.

[8] *Id.* at 3.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

of $679,113.78.[15] The petition alleges Defendant has refused to pay pursuant to the appraisal award, tendering proceeds substantially less than the award.[16] The petition includes claims for breach of contract, bad faith penalties pursuant to Louisiana Revised Statues §§ 22:1892 and 22:1973, and enforcement of the appraisal award.[17]

On May 5, 2023, Defendant removed the matter to this Court.[18] On October 10, 2023, Allstate filed a Motion for Leave to Amend Complaint, adding Sawdust as an additional plaintiff.[19] The motion was referred to the Magistrate Judge. On November 8, 2023, following oral argument, the motion was granted.[20] On October 11, 2024, Defendant filed the instant motion.[21] On November 4, 2024, Sawdust filed a memorandum in response to Defendant's motion.[22] On November 11, 2024, Defendant filed a reply memorandum in further support of its motion.[23]

## II. Parties' Arguments

### A.    Defendant's Argument in Support of the Motion

Defendant contends Sawdust executed an assignment of all its post-loss rights to Allstate on September 27, 2021, less than 30 days from the date of loss.[24] Defendant argues because

---

[15] *Id.*

[16] *Id.* at 4.

[17] *Id.*

[18] Rec. Doc. 1.

[19] Rec. Doc. 18.

[20] Rec. Doc. 26.

[21] Rec. Doc. 42.

[22] Rec. Doc. 43.

[23] Rec. Doc. 44.

[24] Rec. Doc. 42 at 1.

Sawdust divested itself of its rights before any bad faith could occur, Sawdust now has no right to seek any amounts from Defendant related to Hurricane Ida.[25] Defendant states it reasonably investigated the claim, issued a partial denial of coverage based on its engineer's investigation report, and tendered payment according to a reservation of rights.[26] Defendant explains that the claim then proceeded to appraisal under a reservation of rights.[27] Defendant contends upon receipt of the appraisal award, Defendant properly reduced the award amount to exclude non-covered damage as set forth in its reservation of rights, and tendered payment under another reservation of rights for all other claims.[28] Defendant states a total amount of $107,105.83 has been paid to date on this claim.[29]

Defendant contends it is undisputed that Sawdust assigned all its Hurricane Ida contractual claims to Allstate on September 27, 2021.[30] Defendant argues because Sawdust divested itself of all contractual claims, Sawdust did not retain the right to bring contractual claims against Defendant.[31] Defendant avers that Sawdust's contractual claims should be dismissed.[32]

Defendant argues Sawdust's statutory bad faith claims should also be dismissed.[33] Defendant states under Louisiana Revised Statute § 22:1892, insurers must tender any undisputed

---

[25] *Id.*

[26] Rec. Doc. 42-1 at 3.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at 5.

[31] *Id.* at 6.

[32] *Id.*

[33] *Id.*

insurance payments to insureds within 30 days after receipt of such satisfactory written proofs.[34] Defendant further states that under Louisiana Revised Statute § 22:1973, a cause of action for bad faith arises if the insurer fails to pay the amount of any claim due to the insured within 60 days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.[35] Defendant argues because Sawdust divested itself of its rights less than 30 days after the date of loss, it cannot maintain an action for bad faith.[36] Defendant avers Sawdust's bad faith claims must be dismissed.[37]

**B.    *Sawdust's Argument in Opposition to the Motion***

Sawdust states Defendant currently has a binding insurance appraisal award against it in the amount of $679,113.78.[38] Sawdust contends Defendant has refused to pay in full, tendering only $85,750.06.[39] Sawdust avers this is blatantly an act of bad faith by Defendant.[40]

Sawdust contends Defendant's arguments are identical to those raised in Defendant's first motion for summary judgment.[41] Sawdust explains that in Defendant's first motion for summary judgment, Defendant argued Allstate's bad faith claims should be dismissed because the assignment of benefits did not expressly state that it included bad faith claims, and even if the assignment did include bad faith claims, the insured [Sawdust] had no bad faith claim that it could

---

[34] *Id.*

[35] *Id.*

[36] *Id.* at 7.

[37] *Id.*

[38] Rec. Doc. 43 at 1.

[39] *Id.*

[40] *Id.*

[41] *Id.* at 5.

have assigned.[42] Sawdust contends in opposition to Allstate's motion to amend the complaint, Defendant similarly argued Sawdust's bad faith claims were futile.[43] Sawdust avers despite Defendant's arguments, the Magistrate Judge granted Allstate's motion to amend adding Sawdust as a plaintiff.[44]

Sawdust argues insurers are still subject to statutory obligations even after a post-loss assignment of benefits.[45] Sawdust contends there is still a contractual obligation between the parties and the statutory obligations flow from the contractual obligations.[46] Sawdust avers the Louisiana Supreme Court has established that post-loss assignments are allowed by law and does not terminate the contractual obligation.[47] Sawdust argues Defendant's reasoning is flawed because the caselaw relied on by Defendant involves the extinguishment of a contractual obligation, not assignment.[48]

Sawdust contends the purpose of the bad faith statutes is to prevent insurers from refusing to tender undisputed insurance funds.[49] Sawdust avers Defendant has failed to tender undisputed insurance funds even after its own appraiser agreed the property damage amounted to $679,113.78.[50] Sawdust states it still possesses bad faith claims to the extent they were not

---

[42] *Id.*

[43] *Id.* at 6.

[44] *Id.*

[45] *Id.* at 7.

[46] *Id.* at 8.

[47] *Id.*

[48] *Id.*

[49] *Id.* at 9.

[50] *Id.*

specifically identified in the assignment of benefits.[51] Sawdust argues that this Court should follow the law of the case in the prior granting of Allstate's motion for Leave to Amend Complaint.[52]

Alternatively, Sawdust argues it still has a bad faith claim against Defendant because the effective date of the assignment is the date that the insurer had actual knowledge or has been given notice of the assignment.[53] Sawdust contends Defendant has presented no fact which indicate the date it had actual knowledge of the assignment of benefits.[54]

## C.    Defendant's Argument in Further Support of the Motion

In further support of the motion, Defendant contends "law of the case" has not been established.[55] Defendant explains that in the prior ruling by the Magistrate Judge granting Allstate leave of Court to amend the complaint, the Magistrate Judge specifically indicated that his ruling would not affect Defendant's ability to raise the same arguments once Sawdust was added to the suit.[56] Defendant further argues "law of the case" doctrine does not apply to a motion for leave to amend the complaint to add a party.[57] Defendant contends under the "law of the case" doctrine, a court follows its prior *final* decisions."[58] Defendant avers because the prior Order granting Allstate's motion for leave to amend was not a final decision, it cannot constitute "law of the

---

[51] *Id.*

[52] *Id.* at 10.

[53] *Id.*

[54] *Id.* at 10–11.

[55] Rec. Doc. 44 at 2.

[56] *Id.*

[57] *Id.* at 3.

[58] *Id.* (citing *Matter of England,* 153 F.3d 232, 235 (5th Cir. 1998)).

case."[59]

Next, Defendant reiterates Sawdust cannot seek bad faith penalties for actions/omissions allegedly occurring after it divested itself of its underlying Hurricane Ida claim.[60] Defendant contends Sawdust's contractual rights extinguished once Sawdust assigned its rights to Allstate.[61] Defendant argues because Sawdust had no right to collect bad faith penalties at the time the assignment of rights was executed, Sawdust could not have retained rights to bad faith or contractual claims.[62]

While Sawdust argues bad faith penalties begin to accrue at the time notice is provided to the insurer, Defendant asserts this argument fails.[63] Defendant contends it received notice of the underlying loss on October 26, 2021, while the assignment was executed on September 27, 2021.[64] Because Defendant received notice of loss after Sawdust assigned its rights to Allstate, Defendant avers Sawdust still did not have a right to assert claims for bad faith penalties, and thus, could not assign them to Allstate.[65]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[59] *Id.*

[60] *Id.*

[61] *Id.* at 4.

[62] *Id.* at 4–5.

[63] *Id.* at 6.

[64] *Id.*

[65] *Id.*

law."[66] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[67] All reasonable inferences are drawn in favor of the nonmoving party.[68] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[69] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[70] The nonmoving party may not rest upon the pleadings.[71] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[72]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[73] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at

---

[66] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[67] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).

[68] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

[69] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[70] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cites Serv. Co.,* 391 U.S. 253, 289 (1968)).

[71] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[72] *See id.*; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[73] *Celotex Corp.*, 477 U.S. at 323.

trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[74] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[75] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[76]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[77] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[78]

## IV. Analysis

Defendant moves for summary judgment in its favor, arguing that based on the assignment of all Sawdust's post-loss rights to Allstate, Sawdust does not have a right to seek any amounts from Defendant related to Hurricane Ida.[79] In opposition, Sawdust argues to the extent bad faith penalties were excluded from the assignment, Sawdust still retains the right to seek bad faith penalties.[80] Sawdust also argues that a prior ruling granting Allstate's motion to amend the

---

[74] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (internal citation omitted).

[75] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[76] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[77] *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).

[78] *Morris*, 144 F.3d at 380.

[79] *Id.* at 1.

[80] Rec. Doc. 43.

complaint adding Sawdust as a plaintiff indicates that Sawdust has a valid claim. This Court disagrees. There is nothing in the record addressing the viability of Sawdust's claims. As such, the Court rejects Sawdust's argument.

It is undisputed that on September 27, 2021, Sawdust and Allstate executed an Assignment of Insurance Benefits, which states, in pertinent part:

> [Sawdust] hereby assigns any and all insurance rights, benefits, interests, proceeds, and any causes of action under any applicable insurance policies to Allstate Construction Inc. for services rendered or to be rendered by [Allstate]. By executing this Agreement, [Sawdust] intends for all rights, benefits, and proceeds for services rendered by [Allstate] to be assigned solely and exclusively to [Allstate] to compensate [Allstate] for the repair, restoration, and mitigation against future damage to the Property.

Under Louisiana law, "all rights may be assigned, with the exception of those pertaining to obligations that are strictly personal. The assignee is subrogated to the rights of the assignor against the debtor."[81] When an obligee's rights are assigned to another, the assignee "steps into the shoes" of the obligee.[82] The assignee "acquires only those rights possessed by its assignor at the time of assignment."[83]

## A.    Breach of Contract

The Assignment of Insurance Benefits states, "[Sawdust] hereby assigns any and all insurance rights, benefits, interests, proceeds, and any causes of action under any applicable insurance policies to Allstate Construction Inc." Based on the plain language of the agreement, Sawdust validly assigned its insurance contractual rights to Allstate. "If the entire right has been

---

[81] La. Civ. Code art. 2642.

[82] *Hose v. Younger Bros., Inc.,* 878 So.2d 548, 550 (La. Ct. App. 2004).

[83] *Del-Remy Corp. v. Lafayette Ins. Co.,* 616 So.2d 231, 233 (La. Ct. App. 1993).

assigned and suit is brought in the name of the assignor, the latter has no right of action."[84] Since the Assignment transferred all of Sawdust's contractual rights to Allstate, Sawdust cannot maintain a claim for breach of contract against Defendant. As such, Defendant is entitled to summary judgment in its favor as to Sawdust's claim for breach of contract.

**B.    Bad Faith Penalties**

Sawdust argues that it still possesses bad faith claims to the extent they were not specifically identified in the assignment of benefits. Although the Court finds that any bad faith claims were not part of the Assignment, Sawdust cannot maintain a bad faith claim without an underlying insurance claim against the insurer. In *Clausen v. Fid. & Deposit Co. of Maryland,*[85] the Louisiana First Circuit Court of Appeal explained:

> Regarding recovery under La. R.S. 22:658 and 22:1220, we conclude that a plaintiff attempting to base her theory of recovery against an insurer on these statutes must first have a valid, underlying, substantive claim upon which insurance coverage is based. The penalties authorized by these statutes do not stand alone; they do not provide a cause of action against an insurer absent a valid, underlying, insurance claim.[86]

Because Sawdust assigned all its contractual claims to Allstate before any alleged bad faith adjusting occurred, Sawdust cannot maintain bad faith statutory claims against Defendant. For these reasons, the Court finds that Sawdust cannot maintain bad faith claims against Defendant absent an underlying insurance claim. As such, Defendant is entitled to summary judgment in its favor as to Sawdust's claims for bad faith penalties pursuant to La. R.S. §§ 22:1892 and 1973.

## V. Conclusion

For the reasons stated herein, the Court grants Defendant's motion for summary judgment,

---

[84] *Denham Homes L.L.C. v. Teche Fed. Bank*, 182 So.3d 108, 120 (La.App. 1 Cir. 9/18/15).

[85] 95-0504 (La. App. 1 Cir. 8/4/95), 660 So. 2d 83, 85.

[86] *Id.* at *85.

finding that Sawdust validly assigned its contractual rights to Allstate and that Sawdust cannot maintain claims for bad faith penalties absent an underlying insurance claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment[87] is **GRANTED.**

**NEW ORLEANS, LOUISIANA**, this __14th__ day of April, 2025.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[87] Rec. Doc. 42.